NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LAWRENCE A. WARNE,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Civ. No. 17-3357

**OPINION**

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court to review, pursuant to 42 U.S.C. § 405(g), the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff Lawrence A. Warne's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. Plaintiff Lawrence A. Warne ("Plaintiff") seeks reversal or, in the alternative, remand of the Commissioner's decision. (ECF No. 15.) The Commissioner seeks affirmance of the decision. (ECF No. 16.) The Court has decided this matter based on the written submissions of the parties without oral argument pursuant to Local Civil Rule 9.1(f). For the following reasons, the decision of the Commissioner is affirmed.

## BACKGROUND

Plaintiff is now forty-eight years old (Admin. Record ("R.") at 194, ECF No. 4), and has not been gainfully employed since August 17, 2012 (R. at 13). He suffers from several physical impairments, including a number of spine conditions. (R. at 13.) In particular, he has degenerative disc disease of the lumbar spine at L4–5 and L5–S1 with lateral recess and foraminal stenosis at L5–S1, chronic lower back pain, and lumbar facet arthropathy. (*Id*.)

1

Plaintiff also has hip osteoarthritis, nystagmus, and restless leg syndrome. (R. at 13–15.)

Several physicians have examined Plaintiff with respect to his spine. (*See generally* R. at 16–20.) Dr. Lisa Marino evaluated Plaintiff on August 27, 2012, finding lumbar spine pain and likely lumbar degenerative disk disease. (R. at 244.) On November 13, 2012, an imaging study was conducted, finding at L4–L5 a minimal central bulge causing slight effacement of the ventral thecal sac, facet and ligamentous arthropathy, and mild to moderate bilateral foraminal narrowing; and finding at L5–S1 a small central disc protrusion resulting in some narrowing of the left lateral recess and possibly abutting the left S1 nerve root, and mild to moderate left-sided foraminal narrowing. (R. at 238.) No appreciable canal stenosis was found at either L4–L5 or L5–S1. (*Id.*)

Dr. Rishin Patel examined Plaintiff on more than a dozen occasions between May 2013 and April 2015. (R. at 18–20.) On May 23, 2013, Plaintiff "exhibited spasms and tenderness in the lumbar spine with a positive straight leg raise test on the right. He exhibited an antalgic gait with a normal range of motion in the lower extremities." (R. at 18.) Subsequent visits yielded similar findings. (R. at 18–20.) Throughout his visits with Dr. Patel, Plaintiff reported average pain levels between 4 and 7 out of 10, averaging around 5 out of 10. (*Id.*) Plaintiff reported a pain level of 7 on only one visit; otherwise he reported levels between 4 and 6. (*Id.*) Dr. Patel prescribed painkillers and adjusted those medications over time. (*Id.*)

On March 28, 2014, Dr. Patel reached the following conclusions:

> [Plaintiff] was severely and permanently limited in his ability to walk due to arthritic and neurological conditions. He could not walk 200 feet without stopping to rest. [He] was severely and permanently limited in his ability to walk because of an arthritic, neurological or orthopedic condition . . . .

(R. at 24 (internal citation omitted).) On November 11, 2014, Dr. Patel concluded:

> [Plaintiff's] pain would be distracting to adequate performance of daily activities at work[. H]is pain was greatly increased by walking, standing, bending, stooping, and moving his extremities to such a degree to cause distraction from the task or even total abandonment of the task[. H]is medications caused significant side effects that limited the effectiveness of his work duties or the performance of such everyday tasks such as driving an automobile[. He] could occasionally lift and carry up to 10 pounds, sit for 4 hours in an 8 hour work day, [and] stand and walk for 2 hours in an 8 hour work day[. He could] occasionally reach, handle, finger, feel, push and pull with the upper extremities, . . . use foot controls, . . . climb, balance, stoop, kneel, crouch and crawl. He should frequently be limited from vibrations, [and] should occasionally be limited from unprotected heights, moving mechanical parts, humidity and wetness, and extreme cold and heat.

(R. at 24–25 (internal citations omitted).)

A State agency medical consultant concluded that Plaintiff "could lift 20 pounds occasionally [and] 10 pounds frequently, stand or walk 6 hours in an 8 hour work day, sit for 6 hours in an 8 hour work day, [and] occasionally climb, balance, stoop, kneel, crouch[,] and crawl." (R. at 23 (internal citation omitted).)

Plaintiff testified before the Administrative Law Judge (the "ALJ") that his pain is at a level of 7 or 8 out of 10 with medication. (R. at 16.) Plaintiff also testified that he has difficulty with stairs; no longer drives and has difficulty riding in a car; can sit or stand five minutes at a time each; can walk for up to fifteen minutes; has difficulty kneeling, crawling, and reaching overhead; and is most comfortable lying down. (*Id.*)

Plaintiff protectively filed an application for disability insurance benefits on January 21, 2013. (R. at 154.) His claim was denied on April 18, 2013 (R. at 100) and was denied again upon a request for reconsideration on July 25, 2013 (R. at 89–98). After a hearing, the ALJ denied Plaintiff's claim on October 28, 2015. (R. at 8.) Plaintiff requested review from the Appeals Council, and that request was denied on March 24, 2017. (R. at 1.) The ALJ's decision is therefore considered final action by the Commissioner. (*See* R. at 2.)

Plaintiff appealed the Commissioner's decision by filing a Complaint in the present case

3

on May 11, 2017. (ECF No. 1.) Pursuant to Local Civil Rule 9.1, Plaintiff submitted a brief on August 16, 2018 (ECF No. 15), the Commissioner submitted a brief on September 18, 2018 (ECF No. 16), and Plaintiff filed a reply brief on October 3, 2018 (ECF No. 17). This matter is presently before the Court.

## **LEGAL STANDARDS**

### **I.  Disability Determination by the Commissioner**

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To show disability, a claimant must "furnish[] such medical and other evidence of the existence thereof as the Commissioner of Social Security may require." § 423(d)(5)(A).

The Commissioner employs a five-step sequential evaluation process for disability claims. *See generally* 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). The threshold inquiry looks to (1) whether the claimant has engaged in any substantial gainful activity since her alleged disability onset date. § 404.1520(a)(4)(i). If not, the Commissioner considers (2) whether the claimant has any impairment or combination of impairments that is "severe," *i.e.*, that limits the claimant's "physical or mental ability to do basic work activities." §§ 404.1520(b)–(c), 404.1521. If the claimant has a severe impairment, the Commissioner then examines the objective medical evidence to determine (3) whether the impairment matches or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. §§ 404.1520(d), 404.1525, 404.1526. If so, the claimant is then eligible for benefits. § 404.1520(d). If not, the Commissioner assesses the claimant's residual functional capacity

4

("RFC"), which is the claimant's remaining ability to work given her impairments. § 404.1520(e). Comparing the RFC with the requirements of past relevant work, the Commissioner determines (4) whether the claimant has satisfied her burden of establishing that she is unable to return to her past relevant work. §§ 404.1520(f), 404.1560(b); *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007). If the claimant meets this burden, the burden shifts to the Commissioner to show (5) whether other work exists in significant numbers in the national economy that the claimant could perform given her medical impairments, age, education, past work experience, and RFC. § 404.1520(g); *Poulos*, 474 F.3d at 92. If such work does not exist, the claimant is deemed disabled. § 404.1520(g)(1).

## II. District Court Standard of Review

Section 405(g) empowers district courts to "affirm[], modify[], or revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." In reviewing the ALJ's decision, the court reviews questions of law de novo and questions of fact under a "substantial evidence" standard of review. § 405(g); *Poulos*, 474 F.3d at 91. "Substantial evidence is defined as 'more than a mere scintilla;' it means 'such relevant evidence as a reasonable mind might accept as adequate.'" *Thomas v. Comm'r of Soc. Sec. Admin.*, 625 F.3d 798, 800 (3d Cir. 2010) (quoting *Plummer*, 186 F.3d at 427). Where the Commissioner's factual findings are supported by substantial evidence in the record, they are considered conclusive even though the Court might have decided the inquiry differently. § 405(g); *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012). However, the Commissioner must "analyze[] all evidence and . . . sufficiently explain[] the weight he has given to obviously probative exhibits." *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (internal quotations omitted); *accord Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000).

**DISCUSSION**

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 17, 2012. (R. at 13.) The ALJ found at Step Two that Plaintiff had several severe impairments, but at Step Three that none of these impairments equaled a listed impairment. (R. at 13–15.) The ALJ then concluded that Plaintiff:

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except as follows: the claimant can walk and stand up to 6 hours per day but no more than 1 hour at a time and then would need to sit/shift positions for up to 5 minutes every hour while remaining on task. He can occasionally stoop. He can occasionally climb ramps and stairs. He cannot climb ropes, ladders or scaffolds. He can perform no more than occasional overhead reaching. He would be off task 5 percent of the work day, in addition to normal breaks, due to symptoms.

(R. at 15.) At Step Four, the ALJ found that Plaintiff could perform past relevant work as a retail clerk and store manager. (R. at 25.) In the alternative, the ALJ found at Step Five that there are other jobs existing in the national economy that Plaintiff could also perform. (R. at 25–26.)

Plaintiff claims that the ALJ gave improper weight to various pieces of evidence in arriving at these conclusions. Specifically, Plaintiff argues that the ALJ underweighed the conclusions of Dr. Patel, overweighed the conclusions of the State Agency medical consultant, and underweighed Plaintiff's subjective complaints of pain. The Court disagrees; the ALJ based each of her conclusions on substantial evidence in the record and gave satisfactory reasons for the weights given to various pieces of evidence.

The ALJ assigned little weight to Dr. Patel's opinions (other than Dr. Patel's opinion that Plaintiff could occasionally reach overhead) "because they are not consistent with the medical record as a whole." (R. at 25.) Specifically, the ALJ noted that the 2012 imaging study found no central canal stenosis and only some foramina narrowing. (*Id.*) The imaging study also found that Plaintiff's bulges and disc protrusions were deemed "small" and minimal." (*Id.*) The ALJ also

6

discounted Dr. Patel's conclusions because Plaintiff's average pain level was mild to moderate over a long period of time and his medications had been adjusted to provide a manageable level of pain. (*Id.*)

The ALJ assigned different weights to various portions of the State agency medical consultant's opinion. The ALJ assigned little weight to conclusions regarding Plaintiff's ability to balance, kneel, crouch, and crawl because "little evidence of neurological deficits" supported such conclusions. (R. at 23.) Little weight was also assigned to the opinion that Plaintiff "could constantly perform overhead reaching and did not need a sit/stand option and could occasionally climb a ladder, rope or scaffold" because that opinion did not consider Plaintiff's subjective complaints. (*Id.*) The ALJ assigned great weight to the remainder of the State agency medical consultant's opinions because they were "consistent with the medical record as a whole," specifically the 2012 imaging study and Plaintiff's average pain ratings. (*Id.*)

The ALJ discounted Plaintiff's testimony about the pain he experiences. The ALJ first noted that the pain Plaintiff reported during the hearing was inconsistent with the medical record. (R. at 21.) Noting the 2012 imaging study, the pain ratings Plaintiff reported to Dr. Patel, and the lack of cognitive functioning deficits "which is generally inconsistent with . . . elevated levels of pain," the ALJ concluded that Plaintiff's pain is not severe enough to preclude his ability to work. (R. at 21–23.)

In each of these instances the ALJ weighed evidence based on its consistency with other evidence in the record. In so doing, the ALJ relied heavily on the 2012 imaging study and Plaintiff's consistent pain ratings as expressed to Dr. Patel over time. The ALJ therefore provided reasoned explanations for the conclusions ultimately reached based on substantial evidence in the record.

Plaintiff nevertheless argues that substantial evidence does not support the conclusions reached. Plaintiff argues that the ALJ ignored evidence, including the fact that Dr. Marino prescribed Plaintiff with medication for chronic pain management and that Dr. Louis Spagnoletti made findings consistent with Dr. Patel. (Pl.'s Br. at 18–19.) But the ALJ considered the fact that Plaintiff was taking painkillers, and actually took this to be a reason why Plaintiff's pain was manageable. (R. at 25.) And while Dr. Spagnoletti's evidence (*see* R. at 18) was not explicitly weighed, the lengthy discussion of Dr. Patel's evidence (R. at 18–20, 24–25) demonstrates that the ALJ considered evidence from treating physicians in light of the entire medical record.

Plaintiff also claims that the ALJ ignored the fact that Plaintiff exhibited the same symptoms in each visit with Dr. Patel. (Pl.'s Br. at 19.) To the contrary, the ALJ did consider this, but considered Plaintiff's consistent reports of only moderate levels of pain at each visit to be more important. (R. at 23.)

Plaintiff argues that the ALJ should have considered not just the *average* pain reported by Plaintiff at each visit to Dr. Patel, but also the *highest* pain that Plaintiff reported he experienced each day. (Def.'s Br. at 20.) But a person's average level of pain is arguably more relevant to his ability to perform work than his maximum level of pain, especially where no information is provided about how often or for how long the person experiences the maximum level of pain. The ALJ therefore interpreted the data fairly by focusing on Plaintiff's average levels of pain.

Finally, Plaintiff argues that Dr. Patel's opinions were entitled to greater weight because he was Plaintiff's treating physician. While a treating physician's opinion must be accorded "great weight," *Plummer*, 186 F.3d at 429 (internal citation omitted), this notion should not be overstated. A treating physician's opinion is not unassailable, but must be weighed in relation to other medical evidence and in consideration of whether supporting explanations are provided for

8

the conclusions offered. *Id.* (citing *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985)); *see also Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001) (instructing that a treating physician's opinion should be given controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record" (quoting 20 C.F.R. § 404.1527(d)(2))). The ALJ did that, weighing Dr. Patel's conclusions against the other evidence provided in the record.

In short, many of Plaintiff's objections to the ALJ's decision redound to a disagreement about the proper weight that should be given to different pieces of evidence. It is not for the Court to weigh the evidence anew, but only to determine whether substantial evidence supports the ALJ's factual conclusions. 42 U.S.C. § 405(g); *Hagans*, 694 F.3d at 292. Because the ALJ's decision relied on evidence in the record and thoughtfully explained why some evidence was weighed more heavily than other evidence, it was supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is affirmed. An appropriate Order will follow.

Date: __12/3/2018_____                    */s/ Anne E. Thompson*
                                                              ANNE E. THOMPSON, U.S.D.J.